So our next case is United States v. Montez, Mr. Bianchi. May it please the Court. My name is Evan Bianchi. I'm a student attorney at the Blum Legal Clinic of Northwestern University Pritzker School of Law, and I, along with Matt Monahan, represent Petitioner Daniel Montez, who appeals his conviction of one count of possession of cocaine with intent to distribute. Your Honors, there are three reasons why we believe a new trial is required, but given the time restraints, we'd like to focus first on hearsay and then move to sentencing. Otherwise, we will rest on our briefs. Addressing the first issue, Your Honors, Montez was entitled to a fair trial with properly admitted evidence, and he didn't receive that. The transcripts of calls between Montez and Helene were essential to the count of conviction. And although Montez raised the issue of hearsay time and time again before trial, the District Court continuously refused to rule on the issue. And when Montez was finally given an opportunity to present his objection on the first day of trial as requested, going so far as to put a specific transcript in front of the District Court, the Court refused to entertain the objection because it wasn't in the exact form that the Court wanted. I'm not sure that's a fair description of the dilemma the District Judge faced. If I understand this correctly, Mr. Montez, his trial counsel was arguing a blanket hearsay objection, correct? Your Honor, he believed that each of Helene's statements was. Everything, everything in those transcripts. Yes. And when the District Judge finally had a transcript in front of him, it became very clear that the objection, the blanket objection, had utterly no merit. And that's what provoked the District Judge to say, look, you've got to show me specifics and show that you know what a statement is and why this is not reasonable in essence as context, show that it's actually being offered to prove the truth of the statement such as this is good stuff, right? Yes, Your Honor. And even if trial counsel did believe that every single statement was hearsay, the trial judge did not give a reasonable opportunity to refile in this case. So in effect, there was no opportunity. I don't understand. Without this contextual material, the jury or the judge or whoever wouldn't have any idea what was going on. Well, Your Honor, even if some of the statements may have served as context, that doesn't obviate their nature of hearsay. And we know that this is hearsay. Wait, I don't understand that. If it's proper, if the contextual language is necessary to understand what's going on, then I don't see any basis for excluding it. Well, Your Honor, we know from this court in Amaya that hearsay is not admissible just because come on, look, if you look at, what is it, 807, where hearsay is useful, reliable, so on, it's admissible. And this particular hearsay is very much, is really essential to the trial. Well, Your Honor, here the question is, is it offered? Without the context, you don't have the defendant's revelations of his involvement in this drug business. Well, Your Honor, there's another thing that you don't have, and that's why it's harmful here. You don't have, Montez's statements alone don't get to possession with intent to distribute on the alleged date, but Helene's statements fill that gap. They speak directly to the question of possession by indicating that cocaine actually existed and was in Helene's hands so that it could be transferred to Montez. So while they may serve context in other regards as well, here they were necessarily harmful. I don't understand you at all. Without these contextual statements, his mumblings and, you know, very brief statements, they don't mean anything. You have to know what he's responding to in order to know what he means. Well, Your Honor, the statements that the district court let in were statements such as, there's some already, it's real nice, it's sad. Oh, look, yeah, I know. But if you look at this, if you look at the whole exchange between him and these other people, it makes perfectly clear that he's involved in this drug business. And without those, but without those, because his own comments are very terse, you wouldn't know what he was talking about. Your Honor, most Montez's statements speak towards maybe a desire to purchase, but they don't indicate possession, and that's what he was charged with here. And the rest of the government's evidence likewise doesn't answer that question. The government relies on a supposed confession, but there was no confession here. Montez did not explicitly acknowledge any guilt or include details of the crime charged, and the government also relies on testimony from Gallo. But, again, that has no bearing on whether Montez actually possessed cocaine received from Helene on the alleged date, not to mention the fact that Gallo's testimony was disastrous for the government since he admitted to lying in a seating area. How do you interpret his statement, I'm going to grab one first, because the other dude is not going to give me the tickets yet, but I will need three, yes? Well, Your Honor, he may have been requesting to purchase something here, but that doesn't mean that he actually possessed the cocaine on the date the government alleges, and that's the issue here. I don't understand what you're saying. Well, Your Honor, it's a problem because he was charged with possession of cocaine with intent to distribute, and his statements only speak to a desire to buy, not that cocaine actually existed, and the rest of the government's evidence doesn't speak to that question either. What about past possession? I'm sorry, Your Honor? Put the possession in the past, where he's referring to how crummy it was and loose and whatever else you want to say. Obviously, he's comparing it to something he already had. Yes, Your Honor, there may have been some reference to the past, but, again, it's not specifically on the dates alleged by the government. That's your problem then. It's not a matter that there's not something in there about his being involved in past possession because he got acquitted on two counts. Correct, Your Honor. I think that's what you're trying to do. Yes, but for this count, there wasn't anything specific enough with his statements. So you narrowed it down to specifics. Yes, Your Honor. How about the December 14th phone call, two days later, where he's complaining about the quality? Yes, again, there's no temporal limitation in his comments, and there's no indication that he's actually referring. What are you talking about? He says, no, it's just that those motherfuckers, they don't want them like that, man. They think it's bad. Now, he's obviously talking about the present. He's not talking about the past. Yes, Your Honor, but the question is, was he in possession of cocaine on December 12th? And those statements were thereabouts. Well, he's talking about what they want. Now, obviously, he's talking about his customers. Yes, Your Honor, and he may have had an intent to sell, but, again, the government had to show possession. What are you talking about? They're his customers. Why would he be talking about customers if he doesn't have any customers? And he may, Your Honor. Well, if he has customers, it's customers for drugs, which means he has drugs. Not necessarily, Your Honor. And he's in the drug business. His conversation with Helene is to obtain the drugs himself, and there's no indication that he actually sold them. There is. That is what this means. You're not reading it correctly. Well, Your Honor, the inattention at trial continued during sentencing. Here, the district court erred by applying the career offender enhancement. In order to apply the enhancement, the court needed to find that Montes had two predicate crimes of violence. Here, there's only one that was acknowledged, but the other, aggravated battery, was very much in question, and the first reason is because nothing in the record supports that Montes was convicted under the violent prong. What was the objection raised at sentencing to that? Your Honor, Montes objected to the application of the career offender enhancement specifically because of the aggravated battery convention. Now, you know the answer to Mike's question. The specific challenge was that he claimed his civil rights had been restored for that, right? Yes, Your Honor. And that was not any, you're not raising that on appeal? No. So you're raising new questions on appeal, right? Do you agree that plain error is the standard of review here? No, Your Honor, and for a few separate reasons. First, the acknowledgement of the career offender enhancement alone was enough to direct the district court's attention to the PSR on that issue. To any conceivable objection that might be raised? Well, Your Honor, specifically to the aggravated battery as a predicate. To that, yes. Are you saying that the judge had to look at that and say, gee, what reasons might there be why this might not count? Well, Your Honor, just by looking straight at the face of the PSR, it's clear that the probation officer relied on police reports in crafting this PSR, and that's simply not allowed. Let me just ask you, was there any objection, first of all, at the time of sentencing Mr. Montez was pro se, correct? Yes, Your Honor. Did he have a standby counsel? No. He had presumably, I haven't seen any challenge to the voluntariness or any other nature of his waiver of counsel, correct? Right. Okay. He presumably then was warned about the dangers of proceeding without a lawyer. I believe so, yes. And it looks like this is one of them, right? And did he raise any factual objection to the contents of the pre-sentence report? Your Honor, he did so in several ways, one by challenging other crimes that were in his pre-sentence report, but also on page 16 of the record, Your Honor, in the probation interview, it's clear that Montez actually was challenging the factual accuracy of Did he challenge it in the sentencing hearing? No, Your Honor, but again, by raising career offender, that was enough to get the district court's attention to this issue. What's your authority for that, that the district judge has to think of other potential objections? Well, Your Honor, the district judge didn't have to think much in this case because it was clear on the face of it. Would you answer my question, please? I'm sorry, can you repeat your question, please? What authority is there that the district judge had to, in response to one objection to the use of that predicate, think of other potential objections the defendant might have raised? Well, because, Your Honor, on page, while there is some case authority that we have on page 33. That's what I'm asking you for. Yes, we don't have any, Your Honor, but on page 33 of the sentencing hearing, Montez objected just to the application of the career offender enhancement, and that was enough to put the district court on notice. What authority do you have for that? Let me just say, that seems to me like an enormously impractical rule to impose that burden on district judges, to say that, for example, I object on this frivolous ground about restoration of civil rights. Now I've got everything else under the sun that might be raised by creative lawyers on appeal, I've got to worry about. That's not the way things get done. No, Your Honor, but given the circumstance of this case, because of how obvious the error was, that should have put it on notice, and it is plain error in this case. Well, let me ask you about that a little bit more, okay? Because I understand, first of all, would you agree with me that all of the grounds that could have been raised for objecting to that were available at the time of sentencing? And my point in particular is that Justice Kagan's opinion for the court in Mathis told all of us this is nothing new. This was all decided in DeKalb. Well, we believe that Mathis was actually a new rule because it clarified... So the Supreme Court's opinion isn't candid about that it was actually much more innovative. We believe that it was more innovative to this specific question, and although, Your Honor, as well, we recognize that Lynn was just decided last week dealing with the question of batteries to visibility, we asked this court to apply the framework in Mathis, which, although Lynn cites to, it doesn't actually engage in, and we've done it in our brief. Let's assume, for purposes of argument, that we're under plain error review here. Okay? One of the factors, obviously, is whether the arguable error here seriously impugns the fairness, integrity, or public reputation of judicial proceedings. There doesn't seem to be any real dispute that Mr. Montes, for the offense in question, kicked a police officer in the chest. Right? Your Honor, he objects to that on May 16th. When? Of the PSR in the PSR appraisal. But not in the district court? Correct, Your Honor. Okay. And so the question about whether this seriously impugns the integrity of the proceedings is whether the difference between applying this very rigid, kind of almost metaphysical, categorical approach to classifying prior crimes, because he could have violated this in a nonviolent way, for purposes of applying a nonbinding guideline, impugns the integrity, et cetera, of the proceedings when the district judge is perfectly free to take into account what he actually did. And what he has is a long record of murder, violent crimes, unlawful gun possession, and drug trafficking. The judge can consider all of that. Do we have any indication, particularly since the judge said that he has appropriately, not just technically, but appropriately considered a career offender here, that this made any difference to the judge? Well, Your Honor, what this court in Anderson has held is that there needs to be a clear statement that the exact same guideline range would be applied on remand. We don't have that here. Is that on plain error, or is that if just there's an error that was objected to? Your Honor, I'm not sure. There's a difference. Yes, and we know from Molina-Martinez that there is prejudice when a different guideline range would have been applied. Your Honor, Do you read that case as imposing an automatic reversal rule any time there's a guideline error? Your Honor, we believe that, yes, if there is any guideline error, unless the district court has made clear that that exact same guideline would be applied again. And it's for those reasons that we ask this court to... I understood that to say that will often be the case, but avoiding a per se rule. Your Honor, that may be the case, but we believe that the circumstances here lend itself to finding prejudice. And so we ask this court to reverse for a new trial or alternatively re-sentencing. Thank you. Good morning, Your Honors. Starting with the sentencing issue first, the plain error standard of review does apply. But before I get to that, I just want to make clear, at the time that the PSR was prepared, the defendant was represented by counsel, who did file objections to the PSR. And in his objections, he did not challenge, the lawyer representing the defendant did not challenge the career offender finding. Instead, he argued the court should feel free to deviate from those based on various mitigating circumstances and not stay within the advisory guideline range. Prior to sentencing, which happened substantially later, the defendant did dismiss his counsel against the advice of the court and against the advice of his standby counsel. There were proceedings before the district court regarding that. The defendant was represented, or not represented, but had standby counsel at sentencing. That is clear. That is on the record. So he did have standby counsel at sentencing. And at sentencing, he, pro se, made one argument to challenge the finding in the PSR regarding the career offender guideline, and it was only that his rights had been restored. Period. That was it. His only what? I didn't hear you. Excuse me, Your Honor? His only what, you said? His only objection to the career offender guideline applying to him was that, as to one of those underlying convictions, the murder, the aggravated battery, he wasn't clear as to which, or at least I'm not clear as to which, he claimed his rights had been restored, which the government argued and the district court found was irrelevant to the finding of career offender, and that's not raised as an issue on appeal. So as to the argument he brings, and the issue he raises for the very first time on appeal, that it didn't qualify under the elements or the force clause as a crime of violence for purposes of career offender guideline, that's raised for the first time here, and the plain error standard clearly and appropriately applies. Given the categorical approach that the court is supposed to apply in Molina-Martinez, do we have any flexibility on this? Molina-Martinez on plain error with sentencing guideline errors. With sentencing guidelines. My understanding of this is that the court, the court at this point, the burden falls to the defendant to show that, to prove both plain error and prejudice from that plain error. The record before, we would argue that there's neither, and they've carried their burden as to neither. Under this court's decision in Lynn, the aggravated battery statute remains as it had been before, before Mathis, now after Mathis, the statute's divisible. So the issue is, was he convicted under the harmful battery element, the harmful bodily harm element. The defendant did not contest any of the facts in the PSR, specifically the fact that the police officer claimed he was hit in the chest and kicked in the chest, and that the judge offered him leniency if he pled guilty. Those are the defendant's admissions in the PSR that was before the court. That supports the finding made, you know, that totally supports that the district court found, you know, or incorporated in its finding that it was a correct finding, that this was a qualifying career offender underlying offense. And he's certainly shown no prejudice from that finding, because he's not made a showing that that finding was even possibly erroneous. There's been no... The person who knows right now what he was convicted of is the defendant, and the defendant and his lawyers are not claiming in any way, shape, or form that he wasn't convicted of bodily harm version of battery. And there's just no even proffer to that basis. And everything in the record before this court indicates that that's precisely what he was convicted of. So neither error has been shown, nor prejudice has been shown, nor we would argue is there a basis for this court to exercise its discretion and find plain error. Unless the court has any other questions on that, just briefly on the issue of hearsay, the only point I would make is just we have set forth clearly in our brief and in defense of the district court's handling of this matter, we have set forth clearly in the brief the methodology followed by the district court, who gave the defendant every reasonable opportunity to present his arguments, even though they came to his attention in a far more extensive way than the court could have imagined given what had been stated on prior occasions. He gave them full opportunity to argue it even on the morning of trial. They had opportunity overnight to file something in writing or to at least come in prepared the next day to argue specific statements. And instead, they increased the volume of statements that they now wanted to keep out and still didn't present any arguments. Ms. Greenwald, the volume actually wasn't huge here. It was nine transcripts. Yeah, and obviously we have the luxury of only looking at the ones concerning the count of conviction for December 2011. When that testimony was actually offered, I didn't see a hearsay objection. No. I saw in essence what amounted to a Rule 403 objection but to one of the transcripts. I don't remember if there was another objection. Okay. But I would also point out that I believe the defendant is incorrect when he says that the defendant's own statements weren't what was at essence here. The defendant used codes words like seven and tickets. This is on the December 12th conversations as well. He talked about ordering for his picky customers on December 12th. And then the December 14th conversation, he is clearly stating that he's complaining about the quality of cocaine that had been provided previously to him on the 12th and that his customers were dissatisfied with it. And these are the defendant's words. The target phone in this case was the other guy in the conversation, right? Yes. Yes, Your Honor. So what you picked up were all the conversations the defendant had with that phone. Yes. Yes, Your Honor. And then in addition, though, there was also lots of other evidence, which we cite in our brief, that shows that this was for distribution purposes. I didn't like the testimony that the police officer had been... was part of a gang... Task force. Task force. That's very bad. That's very what, sir? It's bad. It has no relevance to this case. Agreed. Except, you know, he was just... Yes, but it has no relevance, but it injects the term gang into the proceeding. It happened in response to a question of what... in passing, as to what unit he was... That's not a proper question when the answer is, I'm, you know, in the gang unit. Because that tells the jury, oh, gang, gang, this is not just selling drugs, this is a gang. It seems to me a totally gratuitous question. For what it's worth, I agree with that. Okay. Well, and I understand that in this particular case, the issue was waived for appeal because when the defendant did object... Yeah, I know that. I think this is very improper behavior by the prosecutor. We're asking you to report this view back to your office. I will do. Will do. But I would say that it was brief, as the district court noted. It was waived. The district court immediately asked... Yes, I know that. That has nothing to do with what I'm saying. No, I hear what you're saying, and I will, is what I will report to the court, is I will. If there are no other questions, we would ask... Sorry, one quick question, which is not specific to this, but there's this problem, I've seen this several times now, with cost containment measures of the Cook Circuit Court Clerk's Office... It's in the probation office? In this case, it was the probation office. Our probation office? Our probation officer said they did not order the underlying documents for that reason. We don't manage them. I understand that, and I know there are budget pressures. But years of imprisonment can turn on these records from the state courts. I don't understand how worrying about copying costs? Is that what we're talking about here? I don't know what expenses are involved. Could you all find out? This is, to me, it just seems crazy. I can pass that on to you. We don't control the probation office either, but I can pass that on. No, but the district judges do. And maybe it's worth raising with the district judges, but this notion that district judges are supposed to be making sentencing decisions that affect years of prison at roughly the cost of a college education per year per prisoner because we're trying to save copying costs in the probation office just sounds pretty loony. Right. I don't understand, but I will pass that back on to my office, but we really do not control that. If the court has no further questions, we just ask respectfully that the court affirm the conviction and sentence. Thank you. So, Mr. Monahan? May it please the court. Three quick points related to sentencing, Your Honors. Even here on plain error, the government's arguing for an enhancement they cannot support. The PSR on page 15 infers the elements of the facts in the police reports. Shepard squarely prohibits this, and that's precisely one of the reasons why we have Shepard. From there... Shepard was an armed career criminal case, though, right? It was a statutory case. Yes, Your Honor. Dramatic changes on minimums and maximums. This is about advice, right? Yes, Your Honor. And is there any reason the district judge can't take into account of what actually happened? Well, these... Section 3661, no limits. There are no limits, Your Honor. But this court's precedent has interpreted the guideline and ACCA interchangeably. And much of Shepard's rationale, even in the ACCA context, still applies to the guideline, even if only to avoid many trials like what we have here over what exactly happened. No, there isn't. There was no objection. There was no objection, but on page 16 of the PSR, Mr. Montes, in his interview with probation, takes issue with the facts reported in that police report. None of this needed to have happened if the government had just met its burden of producing the Shepard documents here. And if anyone had taken a look, page 15, the first line says the arrest report indicates. Sorry, page... Yes, page 16 of the PSR. I'm looking at that, I thought. There's an interview... Or are you talking about an interview transcript? Yes. It's in the PSR. The probation officer conducts a brief interview with Mr. Montes and Mr. Montes contests the police report's version. He says he suffers serious injuries. And this is exactly why, had an indictment, a plea colloquy, any of the underlying documents been put into the record at the district court, then we wouldn't be here arguing over this. And the lack of these documents, that's plenary. And it impugns the judicial system not to have them. So we'd ask that this court reverse, at a minimum, for resentencing on that point. Thank you, Your Honors. Okay, thank you. Thank you to both counsel, both sides. And we'll move on to our next case.